**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KYLE WARNER<br>131 Brown Avenue<br>Chillicothe, Ohio 45601 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| PPG INDUSTRIES OHIO, INC.<br>One PPG Place<br>Pittsburgh, Pennsylvania 15272 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>PPG Industries Inc.<br>c/o The Prentice-Hall Corporation<br>System, Inc.<br>50 W. Broad Street, Suite 1330<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Kyle Warner, by and through undersigned counsel, as his Complaint against Defendant PPG Industries Ohio, Inc. ("PPG"), states and avers the following:

**PARTIES AND VENUE**

1. Warner is a resident of the city of Chillicothe, Ross County, Ohio.

2. At all times herein, Warner was acting in the course and scope of his employment.

3. PPG is a foreign corporation whose principal place of business is located at One PPG Place, Pittsburgh, Allegheny County, Pennsylvania 15272.

4. PPG is organized under the laws of the State of Delaware.

5. PPG is not domiciled in the State of Ohio.

6. PPG is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

1

7. All of the material events alleged in this Complaint occurred in Pickaway County, Ohio.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

## FACTS

9. Warner is a former employee of PPG.

10. Warner worked for PPG as a warehouse worker, team finisher, and reactor operator.

11. Warner began working for PPG on June 6, 2016.

12. Warner was terminated on May 14, 2021.

13. Warner worked at PPG's 559 Pittsburgh Road, Circleville, Ohio 43113 location (the "Plant").

14. Warner was a member of the International Chemical Workers Union – Local No. 776C (the "Union") throughout his term of employment with PPG.

15. On September 25, 2017, the Union entered into a valid labor agreement with PPG (the "Labor Agreement") (a copy of the Labor Agreement is attached hereto as **Exhibit 1**).

16. The term of the Labor Agreement was from September 25, 2017 to September 25, 2022.

17. Warner was employed with PPG was during the effective term of the Labor Agreement.

18. As a member of the Union and an employee of PPG, Warner was protected by and an intended beneficiary of the terms of the Labor Agreement at all times relevant hereto.

19. Article IV, Section 2 of the Labor Agreement states, "An employee will not be suspended or discharged except for just cause. [PPG] agrees that, where it becomes necessary to discharge or suspend an employee for more than the balance of the shift, such employee shall, at the time of his suspension or discharge, be given the reason therefore in writing…"

20. Article IV, Section 2 of the Labor Agreement further states, "In such suspension or discharge cases, a minimum of two (2) and a maximum of four (4) Union representatives (including at least one Union Officer) shall be present."

21. Warner was notified of his discharge via a voicemail phone message on May 14, 2021.

22. Warner was not provided the reason for his discharge in writing.

23. Warner did not have two Union representatives present during his discharge.

24. Warner did not have one Union officer present during his discharge.

25. PPG terminated Warner without just cause.

26. Warner suffered damages as a result of PPG's termination of Warner's employment.

27. Warner suffered damages as a result of PPG's breach of contract.

28. Warner's total damages exceed $75,000.00.

29. On September 25, 2020, there was a dangerous isocyanate leak outside of building 2.

30. The spill created a dangerous and/or unsafe working condition.

31. Employees were told to continue their work as usual and to place a bucket under the leak and change it as it filled up.

32. Warner raised concerns about these instructions to supervisor Chuck Scipion.

33. Warner lawfully reported the condition to the Ohio Occupational Safety and Health Administration ("OSHA") the next day.

34. Warner began training as a K5 Operator in January 2021.

35. This new position required approximately six months of training to perform.

36. During his training period, Warner was forced by his supervisor, Nate Hymen, to manage an entire area of the Plant without his trainer present.

37. Hymen did not participate in the decision to hire Warner.

38. Warner was not qualified to manage that area of the Plant without his trainer present.

39. Warner verbally raised his objections to this assignment to Hymen.

40. Warner was ordered by Hymen to do as he was told or go home.

41. Warner completed this order.

42. This order created a dangerous and/or unsafe working condition for Plant employees because Warner was not fully trained or experienced enough to manage that area of the Plant on his own.

43. Warner reasonably believed that forcing him to oversee and manage this area of the Plant posed a risk to the safety of employees and frequenters.

44. Warner reported this dangerous and/or unsafe working condition to PPG's Ethics Hotline.

45. When Warner returned to work the following day, Hymen denigrated Warner for reporting those conditions.

46. Hymen stated to Warner, "See what happened out of it? Nothing."

47. Less than a week later, on May 14, 2021, Warner was notified that he had been terminated by Kareem Kativ, a Plant manager, who was aware of Warner's multiple complaints regarding unsafe and/or dangerous working conditions.

48. Warner was told he was terminated because he had allegedly lied during PPG's investigation of Warner's safety complaints and for failure to understand verbal or written instructions.

49. PPG has a progressive disciplinary policy ("Discipline Policy").

50. A verbal warning is the lowest level of discipline in the Discipline Policy.

51. Warner did not receive a verbal warning before the Termination.

52. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

53. Warner did not receive a written warning before the Termination.

54. A termination is the highest level of discipline in the Discipline Policy.

55. PPG knowingly skipped progressive disciplinary steps in terminating Warner.

56. PPG knowingly terminated Warner's employment.

57. PPG knowingly took an adverse employment action against Warner.

58. PPG knowingly took an adverse action against Warner.

59. PPG intentionally skipped progressive disciplinary steps in terminating Warner.

60. PPG intentionally terminated Warner's employment.

61. PPG intentionally took an adverse employment action against Warner.

62. PPG intentionally took an adverse action against Warner.

63. PPG knew that skipping progressive disciplinary steps in terminating Warner would cause Warner harm, including economic harm.

64. PPG knew that terminating Warner would cause Warner harm, including economic harm.

65. PPG willfully skipped progressive disciplinary steps in terminating Warner.

66. PPG willfully terminated Warner's employment.

67. PPG willfully took an adverse employment action against Warner.

68. PPG willfully took an adverse action against Warner.

69. On May 14, 2021, PPG terminated Warner's employment because of his multiple complaints regarding dangerous and/or unsafe working conditions.

70. As a direct and proximate result of PPG's conduct, Warner suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT I: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

71. Warner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

72. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, including O.R.C. §§ 4101.11 and 4101.12, or in the common law, requiring employers to furnish a safe workplace and protect employees.

73. In or about early May 2021, Warner reported in writing to PPG's Ethics Hotline that he was being forced to oversee and manage an area of the Plant that he was not trained or qualified to oversee or manage.

74. Warner reasonably believed that forcing him to oversee and manage this area of the Plant posed a risk to the safety of employees and frequenters.

75. PPG's termination of Warner jeopardizes this public policy.

76. PPG's termination of Warner was motivated by conduct related to this public policy.

77. PPG had no overriding business justification for terminating Warner.

78. As a direct and proximate result of PPG's conduct, Warner has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: BREACH OF CONTRACT

79. Warner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

80. The Union and PPG entered into the Labor Agreement on September 25, 2017.

81. A copy of the Labor Agreement is attached hereto as Exhibit 1.

82. The effective term of the Labor Agreement was from September 25, 2017 to September 25, 2022.

83. Warner was employed with PPG was during the effective term of the Labor Agreement.

84. Warner was a member of the Union throughout his term of employment with PPG.

6

85. As a member of the Union and as an employee of PPG, Warner was protected by and an intended beneficiary of the terms of the Labor Agreement at all times relevant hereto.

86. Warner was an intended beneficiary of the Labor Agreement because Article II, Section 1 states that, "[PPG] recognizes the Union as the sole collective bargaining agent for all production and maintenance employees including all process controlmen, product finishers, warehousemen, and maintenance men employed at [PPG's] [Plant]…

87. Article IV, Section 2 of the Labor Agreement states, "An employee will not be suspended or discharged except for just cause.  [PPG] agrees that, where it becomes necessary to discharge or suspend an employee for more than the balance of the shift, such employee shall, at the time of his suspension or discharge, be given the reason therefore in writing…"

88. Article IV, Section 2 of the Labor Agreement further states, "In such suspension or discharge cases, a minimum of two (2) and a maximum of four (4) Union representatives (including at least one Union Officer) shall be present."

89. Warner was notified of his discharge via a voicemail phone message on May 14, 2021.

90. Warner was not provided the reason for his discharge in writing.

91. Warner did not have two Union representatives present during his discharge.

92. Warner did not have one Union officer present during his discharge.

93. PPG terminated Warner without just cause.

94. Warner suffered damages as a result of PPG's termination of Warner's employment.

95. Warner suffered damages as a result of PPG's breach of contract.

96. Warner substantially performed under the terms of the Labor Agreement.

97. PPG failed to substantially perform under the Labor Agreement.

98. As a direct and proximate cause of Defendant's conduct, Warner suffered, and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Warner respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring PPG to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring PPG to expunge Warner's personnel file of all negative documentation;

(c) An award against PPG of compensatory and monetary damages to compensate Warner for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $75,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Warner claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Gregory T. Shumaker*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: greg.shumaker@spitzlawfirm.com
*Attorneys for Plaintiff Kyle Warner*

## JURY DEMAND

Plaintiff Warner demands a trial by jury by the maximum number of jurors permitted.

*/s/ Gregory T. Shumaker*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
*Attorneys for Plaintiff Kyle Warner*